IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

ERIC GREER                                                                              PLAINTIFF

vs.                                    Civil No. 1:10-cv-01065

CITY OF WARREN, BRYAN MARTIN, and
RANDY PEEK, Individually and in their Official
Capacities                                                                          DEFENDANTS

## ORDER

Before this Court is Defendants' Motion for Summary Judgment. ECF No. 28.[1]  Defendants

filed this Motion and the accompanying brief on February 14, 2012.  *Id.*  On March 4, 2012, Plaintiff

responded to this Motion.  ECF No. 35.  Plaintiff claims Defendants are not entitled to summary

judgment on any of their claims.  *Id.*  Defendants replied in support of their Motion on March 7,

2012.  ECF No. 38.  This Court held a hearing on this Motion on March 20, 2012 in El Dorado,

Arkansas.  All Parties were present and were represented by counsel.  *Id.*  This case is set for trial

on April 16, 2012 in El Dorado, Arkansas before the undersigned.  ECF No. 27.

The Parties have consented to the jurisdiction of a magistrate judge to conduct any and all

proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and

conducting all post-judgment proceedings.  ECF No. 16.  Pursuant to this authority, the Court finds

this Motion is ready for decision and issues this Order.

## 1.    BACKGROUND

On September 30, 2010, Plaintiff filed his Complaint in this case.  ECF No. 1.  Thereafter,

on November 23, 2010, Plaintiff filed an Amended Complaint.  ECF No. 14.  Defendants, the City

---

[1] The docket numbers for this case are referenced by the designation "ECF. No."

1

of Warren, Arkansas ("Defendant City"), Mayor Bryan Martin ("Defendant Martin"), and Police Chief Randy Peek ("Defendant Peek") filed an answer to Plaintiff's Amended Complaint on December 3, 2010.  ECF No. 17.  Plaintiff's Amended Complaint is the current pleading in this action.  *Id.*  In his Amended Complaint, Plaintiff raises three counts: (1) Count 1: First Amendment retaliation; (2) Count II: Fourteenth Amendment Due Process violation; and (3) Count III: Arkansas Whistle-Blower Act ("AWBA") violation.  *Id.*

Plaintiff claims that at the time of the events in question, he was a police officer for the Defendant City and was working as a patrol supervisor.  ECF No. 14.  Defendant City allegedly terminated Plaintiff for using a racial slur during an arrest in March of 2009.  ECF No. 30 ¶ 26. Plaintiff claims he did not use this racial slur and he was unlawfully terminated from his position. *Id.* ¶ 3.  Plaintiff claims he was "accused of being a racist and using racial slurs," and Plaintiff claims he was not given the opportunity to fully rebut these charges at his name-clearing hearing.  *Id.* ¶¶ 3-4. Specifically, Plaintiff alleges his hearing was constitutionally inadequate because during that hearing, he was not given the opportunity to "call his witnesses or cross examine witnesses against him."  *Id.* ¶ 6.  Plaintiff claims this denial deprived him of his Fourteenth Amendment due process rights (Count II).  *Id.* ¶ 28.

Plaintiff also claims he had a Confederate Flag[2] at his house and on his private MySpace page.[3]  ECF No. 14 ¶ 7.  Plaintiff claims displaying this Confederate Flag was protected speech.  *Id.* Plaintiff claims he was terminated because he displayed this Confederate Flag.  *Id.* ¶¶ 19-20.

---

[2] Plaintiff characterizes this flag as a Virginia Battle Flag.  ECF No. 37-5 at 25:4 to 26:4.  For ease of reference, this Court will refer to the flag in question as a "Confederate Flag."

[3] It appears there is some dispute as to whether Plaintiff or one of his MySpace "friends" placed this Confederate Flag on his page.  ECF No. 28-1 at 48:6-21.  Because Plaintiff claims this was his protected speech, this Court presumes that by keeping this flag on his page, he was adopting this speech as his own.

Plaintiff claims this termination was in violation of his First Amendment free speech rights (Count I). *Id.*

Finally, Plaintiff claims this wrongful termination was to punish him and in retaliation for a report he filed regarding a fellow police officer, Officer Timothy Nichols. *Id.* ¶ 8. Plaintiff reported Officer Nichols for using a racial slur. *Id.* Plaintiff claims that because he reported Officer Nichols, he was terminated. *Id.* ¶ 33. Plaintiff claims this action was in violation of his First Amendment rights (Count I) and in violation of the AWBA (Count III). *Id.* ¶ 1. To further support this accusation, Plaintiff claims Officer Nichols was friends with Sgt. Don Hollingsworth who conducted the investigation into his alleged use of a racial slur. *Id.* ¶¶ 10-11. Plaintiff claims Sgt. Hollingsworth "regularly says that if doesn't like you he'll get you fired," presumably through Defendant Peek. *Id.* ¶ 11. Plaintiff claims Sgt. Hollingsworth told Plaintiff "with a smile on his face" that he had been reported for using a racial slur. *Id.* ¶ 15. Plaintiff claims his motivation was "to get back at Plaintiff." *Id.*

On, February 14, 2012, Defendants filed the present Motion for Summary Judgment. ECF No. 28. With their Motion, Defendants claim they are entitled to summary judgment as to all three of Plaintiff's counts (Counts I to III). *Id.* As to Count I, Defendants claim they are entitled to summary judgment because Plaintiff cannot establish a *prima facie* case of First Amendment retaliation. ECF No. 29 at 4-17. As to Count II, Defendants claim they are entitled to summary judgment because Plaintiff has not been deprived of any rights to procedural due process or, alternatively, Plaintiff has waived his procedural due process claim. *Id.* at 17-22. As to Count III, Defendants claim they are entitled to summary judgment because Plaintiff's claim is insufficiently pled and because Plaintiff has not established a violation of this act. *Id.* at 23-30. Finally, separate Defendants Martin and Peek argue they are entitled to summary judgment on the claims against them

in they individual capacities.  *Id.* at 30-37.

In support of their Motion, Defendants have submitted the following: (1) relevant portions of Defendants' Responses to Plaintiff's First Set of Interrogatories and Requests for Production of Documents; (2) transcript from the preliminary injunction hearing; (3) relevant portions of the deposition of Plaintiff; (4) relevant portions of the deposition of Defendant Martin; (5) relevant portions of the deposition of Defendant Peek; (6) relevant portions of the deposition of Deputy Jester; and (7) relevant portions fo the deposition of Deputy Hearnsberger.  ECF No. 28.

Plaintiff filed his response on March 4, 2012.  ECF No. 35.  Plaintiff claims Defendants' request for summary judgment as to all of his claims should be denied.  *Id.*  In support of his response, Plaintiff has submitted the following: (1) the deposition of Defendant Peek; (2) the deposition of Deputy Jester; (3) the deposition of Deputy Hearnsberger; (4) the deposition of Defendant Martin; (5) his deposition; and (6) Defendants' discovery responses.  ECF No. 37-1 to 37-6.  On March 7, 2012, Defendants filed a reply in support of their Motion.  ECF No. 38.  This matter is now ripe for consideration.

## 2.   **APPLICABLE LAW**

The summary judgment standard is well-established.  A motion for summary judgment will be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  As the United States Court of Appeals for the Eighth Circuit has recognized, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Wabun-Inini v. Sessions,* 900 F.2d 1234, 1238 (8th Cir. 2000) (citation omitted).

The party moving for summary judgment has the initial burden of informing the court of the

4

basis for its motion and identifying the pleadings, admissions, discovery documents, and affidavits it contends show the absence of genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). However, the moving party does not have the burden of negating the other party's claim. *Id.* The moving party meets its burden merely by "pointing out" to the district court that there is an "absence of evidence to support the nonmoving party's case." *Id.* at 325. The nonmoving party must then go beyond its own pleadings to designate specific facts raising a genuine triable issue. *Id.* at 324.

In order to establish a genuine issue of material fact exists, the nonmoving party must show that: (1) there is a factual dispute; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine. *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). A dispute is genuine only if a reasonable jury could return a verdict for either party. *Id.* The mere existence of a factual dispute is insufficient alone to bar summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Rather, the dispute must be outcome-determinative under prevailing law. *Id.* When evaluating the evidence, it is incumbent upon this Court to view the facts in a light most favorable to the nonmoving party, Plaintiff, to determine whether there is a genuine issue of material fact. *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (citation omitted).

## 3.    **DISCUSSION**

As outlined above, Plaintiff has raised three claims, Counts I through III, in his Amended Complaint. ECF No. 14. Defendants seek summary judgment in their favor on all three of these counts. ECF No. 28. As an initial matter, it is important to recognize which parties this suit is against.

First, this Court should consider whether Defendants Peek and Martin are properly sued in

their "official capacities."  Plaintiff's Counts I and II (constitutional claims) are against Defendant

City and are not against Defendants Peek and Martin in their "official capacities."  *Kentucky v.*

*Graham,* 473 U.S. 159, 165 (1985) (holding that "[a]s long as the government entity receives notice

and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be

treated as a suit against the entity").  Plaintiff's Count III (AWBA claim) is also only against

Defendant City and is not against Defendants Peek and Martin in their "official capacities."  *Sutton*

*v. Ark. State Univ.,* No. 3:11-cv-00123, 2011 WL 3861391, at *5 (E.D. Ark. Sept. 1, 2011)

(recognizing AWBA only applies to a "public employer" and does not include individuals).  Because

all of Plaintiff's "official capacity" claims are against Defendant City, this Court will only refer to

Defendant City in the first section of this Order.

Second, this Court should consider whether Defendants Peek and Martin are properly sued

in their "individual capacities."  As noted above, they are not liable in their individual capacities

under AWBA.  *Sutton,* 2011 WL 3861391, at *5.  For the alleged constitutional violations (Counts

I and II), this Court will address this claim in the final section of this Order.

A.      **Count I: First Amendment Claim**[4]

Defendant City argues it is entitled to summary judgment on Plaintiff's First Amendment

retaliation claim.  ECF No. 29 at 4-17.  Defendant City makes four specific arguments against

Plaintiff's claim: (1) Plaintiff cannot establish a *prima facie* case of First Amendment retaliation

because he did not engage in protected speech; (2) Plaintiff cannot establish a *prima facie* case of

---

[4] Plaintiff's First Amendment claim arises under both 28 U.S.C. § 1983 and the Arkansas Civil Rights Act
of 1993 ("ACRA"), Ark. Code Ann. § 16-123-105 (2003).  ECF No. 14.  In construing the ACRA, Arkansas courts
"look for guidance to state and federal decisions" interpreting actions under § 1983.  *Id.* Ark. Code Ann. § 16-123-
105(c). For purposes of his claim in this case, Plaintiff presumes that the requirements under the ACRA and § 1983
actions are the same.  ECF No. 36 at 9.  Based upon this Court's review of the caselaw, it appears these requirements
are the same.  *See Gentry v. Robinson,* 2009 Ark. 634, ___ S.W.3d ___, *21 (2009) (adopting the "policy" or
"custom" requirement for ACRA actions).

First Amendment retaliation because he cannot demonstrate his allegedly protected speech was a substantial or motivating factor in Defendant City's decision to terminate him; (3) Plaintiff cannot establish a *prima facie* case of First Amendment retaliation because he cannot demonstrate Defendant City would have made the same decision to terminate him absent the alleged protected activity; and (4) Plaintiff cannot recover against Defendant City because he has not shown its policy or custom was a moving force behind any the allegedly unlawful termination.  *Id.*

### 1.    Legal Standard for First Amendment Retaliation

As an initial matter, the Court must determine the proper standard for evaluating a First Amendment retaliation claim.  In its opening briefing, Defendant City cites a three-part analysis for establishing a *prima facie* case of First Amendment retaliation: (1) "Did the individual show that it did something which was speech or petitioning touching on a matter of 'public concern' thereby making it protected activity[?]"; (2) "[Was] the alleged protected activity a substantial or motivating factor in the City's action against the employees[?]"; and (3) "[T]hen the question becomes did the City show that it would have taken the same action absent the alleged protected activity[?]"  ECF No. 29 at 5-7.

Upon review, this Court finds the actual standard is less stringent.  Indeed, to establish a *prima facie* case of First Amendment retaliation, the final showing ("same decision test") is not required.  Instead, Plaintiff must demonstrate (1) he or she engaged in conduct protected by the First Amendment and (2) the protected conduct was a substantial or motivating factor in the employer's decision to take the adverse employment action.  *Hughes v. Stottlemyre*, 506 F.3d 675, 678 (8th Cir. 2007); *L.L. Nelson Enterprises, Inc. v. Cnty. of St. Louis, Mo.,* No. 10-3467, 2012 WL 752334, at *5 (8th Cir. Mar. 9, 2012).  *See also Wagner v. Jones,* 664 F.3d 259, 270 (8th Cir. 2011).

If Plaintiff can make this *prima facie* showing, "a presumption of retaliation arises, and the

burden of production shifts to the employer to advance a legitimate reason for the employment action." *Hughes,* 506 F.3d at 679.  "Once the employer advances a legitimate reason for the adverse action, the presumption drops out and 'the trier of fact proceeds to decide the ultimate question: whether plaintiff has proven that the defendant intentionally discriminated against plaintiff.'" *Id.* Plaintiff can make that showing indirectly "by establishing the employer's proffered reason was a pretext for retaliation." *Id.*

Based upon this standard, this Court will address the following: (1) whether Plaintiff engaged in protected speech; (2) whether the protected speech was a substantial or motivating factor in the employer's decision to take the adverse employment action; (3) whether Plaintiff has provided sufficient evidence to demonstrate a fact-issue on pretext; and (4) whether Defendant City had a "policy" or "custom" that causes it to be liable for this termination.  As outlined above, this Court will not address Plaintiff's third argument of whether Defendant City would have made the "same decision" because such a showing is not required.

### 2.  Protected Speech

Government employees do not relinquish their First Amendment rights to freedom of speech and expression as a condition of employment.  *Pickering v. Bd. of Educ.,* 391 U.S. 563, 568 (1968); *Connick v. Myers,* 461 U.S. 138, 140 (1983).  However, "[a] police department, as a paramilitary organization, must be given considerably more latitude in its decisions regarding discipline and personnel regulations than the ordinary government employer."  *Crain v. Bd. of Police Commissioners,* 920 F.2d 1402, 1409 (8th Cir. 1990).

In *Connick,* the United States Supreme Court established a two-step inquiry in determining whether a public employee's speech is protected.  First, the employee's speech must be "fairly characterized as constituting speech on a matter of public concern."  *Connick,* 461 U.S. at 146.

Second, the employee's right to comment on a matter of public concern must be balanced with the relevant interests of the public employer. *Id.* As the Supreme Court has recognized, this two-part inquiry is a question of law for courts to properly decide. *Id.* at 148 n.7, 150 n.10. *Sparr v. Ward,* 306 F.3d 589, 594 (8th Cir. 2002) (holding that "[b]oth parts of the *Connick-Pickering* inquiry are questions of law for the court to decide").

Accordingly, this Court must first consider whether Plaintiff's speech can be "fairly characterized as constituting speech on a matter of public concern." *Connick,* 461 U.S. at 146. Then, this Court must balance the interests of Defendant City. *Id.* At issue in this case are two different instances of "speech": (1) Plaintiff's complaint to his supervisor of another police officer using a racial slur; and (2) Plaintiff's display of the Confederate Flag both at his private residence and on his private MySpace page. ECF No. 14.

### a.      Reported Racial Slur

As for Plaintiff's first claim that his report of a racial slur was protected speech, two cases from the Supreme Court must be carefully considered. *See Givhan v. W. Line Consol. Sch. Dist.,* 439 U.S. 410 (1979); *Connick,* 461 U.S. at 138. In *Givhan,* a teacher was terminated because she complained privately to the school principal regarding the school district's practices and policies which she perceived to be racially discriminatory. 439 U.S. at 410. The federal district court found the dismissal violated the teacher's First Amendment rights, but the Fifth Circuit Court of Appeals reversed on appeal. *Id.* at 413. The Fifth Circuit held that "because petitioner had privately expressed her complaints and opinions to the principal, her expression was not protected under the First Amendment." *Id.* The Supreme Court reversed, holding that simply because this communication was private does not necessarily indicate that such speech was not protected by the First Amendment. *Id.*

9

In *Connick,* an assistant district attorney was terminated because she refused to accept a transfer, complained about the transfer, and circulated an internal questionnaire within her office that was unflattering to her supervisors.  461 U.S. at 138.  The plaintiff in *Connick* claimed the reason she was terminated was that she circulated the unflattering questionnaire.  *Id.*  As to that questionnaire, the Supreme Court found it did not touch on a matter of "public concern."  *Id.*  The Supreme Court held, "her survey, in our view, is most accurately characterized as an employee grievance concerning internal office policy."  *Id.* at 154.

The Supreme Court decided *Givhan* in 1979 and *Connick* in 1983.  The *Connick* decision discussed *Givhan* and went even further in explaining the holding of *Givhan.*  In a footnote, the Supreme Court distinguished the facts in *Connick* from the facts in *Givhan.  Connick,* 461 U.S. at 148 n.8.  In characterizing the plaintiff's speech in *Givhan,* the Supreme Court stated that her "right to protest racial discrimination" is *"a matter inherently of public concern"* and "is not forfeited by her choice of a private forum."  *Id.* (emphasis added).  Under the present facts, Plaintiff claims he reported a racial slur made by another officer.  ECF No. 14 ¶ 8.  Such speech can be construed as protesting racial discrimination and, as such, is a "matter inherently of public concern" under *Givhan* and *Connick.*  Further, consistent with the holding in *Givhan*, that speech did not lose its protected status simply because it was reported through an internal office procedure.[5]  Thus, this Court finds Plaintiff's speech on this issue was protected speech.

---

[5] In *Crain v. Board of Police Commissioners,* 920 F.2d 1402, 1411 (8th Cir. 1990), the Eighth Circuit held that a police officer's written complaint to a superior alleging racial discrimination did not involve a matter of public concern.  Citing *Connick,* the Eighth Circuit in *Crain* relied upon the Supreme Court's holding that the assistant district attorney's questionnaire was a part of her internal grievance procedure and was, therefore, not a matter of public concern.  In *Crain,* however, the Eighth Circuit did not reference the Supreme Court's decision in *Givhan* or the footnote in *Connick* wherein the Supreme Court stated that a "right to protest racial discrimination" is "a matter inherently of public concern."  Based upon the *Crain* opinion, it appears this issue was not fully briefed or properly presented to the Eighth Circuit.  Thus, this Court must follow the holding in *Connick* and *Givhan.*

Under *Connick,* the second step of the analysis is to balance Defendant City's interests of determining whether this speech was entitled to First Amendment protection. *Connick,* 461 U.S. at 159. As represented by Defendant City, in the present action, Plaintiff's report was internal and was completed as an "interested employee of the City of Warren Police Department" and on "the standard form required by the City's polices and procedures." ECF No. 29. Thus, this speech was minimally disruptive to Defendant City.

### b.      Display of a Confederate Flag

Plaintiff claims his display of the Confederate Flag both at his residence and on his private MySpace page was protected speech. ECF No. 14 ¶ 20. In response, Defendant City claims such a display was not protected speech. ECF No. 29 at 8-10. Defendant City argues Plaintiff "was furthering his personal interests [in displaying a Confederate flag] and never intended to comment on matters of public concern." *Id.*

To determine whether this display addresses a matter of public concern, the Court looks at the content, form, and context of the employee's speech. *Connick,* 461 U.S. at 147-48. As an initial matter, based upon this Court's review of the federal cases addressing this issue, it appears only a few other federal courts have addressed the issue of whether the display of a Confederate Flag is protected speech. Notably, in *Carpenter v. City of Tampa,* No. 8:03-cv-451, 2005 WL 1463206, at *3 (M.D. Fla. June 21, 2005), the Middle District of Florida held the display of a Confederate Flag "constituted a matter of public concern and was clearly protected by the First Amendment."

Such a holding is consistent with the Fourth Circuit's holding in *Dixon v. Coburg Dairy, Inc.,* 330 F.3d 250 (4th Cir. 2003), *vacated on other grounds by Dixon v. Coburg Dairy, Inc.,* 369 F.3d 811 (4th Cir. 2005) (en banc). In *Dixon,* the Fourth Circuit held that "[t]he act of displaying a Confederate flag is plainly within the purview of the First Amendment." *Id.* at 262. Further, the

*Dixon* holding is entirely consistent with holdings from the Supreme Court addressing flags and protected speech. In *Texas v. Johnson,* the Supreme Court held that even the act of burning of an American flag was protected speech under the First Amendment. 491 U.S. 397, 406 (1989). In *Texas,* the Supreme Court recognized "the communicative nature of conduct relating to flags." *Id.* at 404. In this case, Plaintiff stated his display of the Confederate Flag was related to his interest in history and heritage. ECF No. 30 ¶ 24; ECF No. 37-5 at 25:4-12. Because Plaintiff's display of that flag reflects such an interest in history and heritage, this Court finds that display clearly touches on a matter of public concern such that it is protected speech under the First Amendment.

Under *Connick,* the interests of Defendant City must also be balanced. *Connick,* 461 U.S. at 159. Defendant City claims Plaintiff's display of a Confederate Flag was unnecessarily disruptive to the functioning of the police department. ECF No. 29 at 9-10. In support of its claim that Plaintiff's actions were disruptive, Defendant City relies upon the testimony of Defendant Peek. ECF No. 29 at 10. Defendant Peek testified that "at least two African-American members of the Department were concerned that Plaintiff might be a racist based on the flags and expressed that they would prefer not to serve with him." *Id.* In contrast, Defendant Martin testified he was not aware of a disruption in the police department because of the Confederate Flag being displayed. ECF No. 37-4 at 26:24-25 to 27:1-3.

Even assuming two African-American members of the City of Warren Police Department expressed concern on this issue, Plaintiff displayed the Confederate Flag at his private residence and on a private MySpace account. There is no indication Plaintiff displayed this Confederate Flag at the workplace where other employees of the police department would be exposed to it while in the workplace. Accordingly, this Court finds the potential disruption to the City of Warren Police Department did not outweigh Plaintiff's protected right to display this Confederate Flag.

12

### 3.      Substantial or Motivating Factor

To survive summary judgment, Plaintiff also has to demonstrate a fact issue as to whether his protected speech was a substantial or motivating factor in his termination.  Defendant City argues the reason Plaintiff was terminated was because he used a racial slur during the arrest of a suspect. ECF No. 29 at 12.  As outlined above, Plaintiff has alleged two types of protected speech: (1) reporting a racial slur and (2) displaying a Confederate Flag at his private residence and on his MySpace page.  To survive summary judgment, Plaintiff has to demonstrate a fact issue as to whether his protected speech on either of these matters was a substantial motivating factor in his termination.

### a.      Reported Racial Slur

Plaintiff claims his reporting a racial slur from Officer Nichols was a substantial or motivating factor in the decision to terminate him.  ECF No. 14 ¶ 8.  In reviewing the evidence, Plaintiff reportedly used a racial slur during the arrest of a suspect on March 4, 2009.  ECF No. 37-1 at 18:16; 28-1 at 27.  Then, sixteen months later, on July 9, 2010, he was terminated for using the racial slur.  *Id.* at 18:19.  It is disputed why this reported racial slur took over a year to investigate. Defendant Peek testified the matter was not pursued further because his sergeant–Sergeant Miller–had initially believed Plaintiff when he denied the allegation and had not pursued the matter further.  *Id.* at 33:13-20.  It is, however, undisputed the other officer who was reportedly present when the racial slur was said–Officer Everett–did not immediately report the matter as he was required to do.  *Id.* at 36:5-7.  Instead, Officer Everett waited until June 24, 2010 to report Plaintiff's alleged use of a racial slur.  *Id.* at 41:25-42:2.  This report occurred fifteen months after Plaintiff allegedly used that slur.

Viewing the facts in a light most favorable to Plaintiff, it would be reasonable for a jury to

conclude this matter was only investigated (and Plaintiff was subsequently terminated) because Plaintiff had reported Officer Nichols for using a racial slur. The evidence indicates Plaintiff's report of Officer Nichols's use of a racial slur predates the investigation into Plaintiff's alleged misconduct. ECF No. 37-1 at 37:17-20. Notably, Plaintiff's memo regarding Officer Nichols's racial slur is dated March 28, 2010. ECF No. 28-1 at 18. On June 28, 2010, approximately three months after he reported Officer Nichols, Plaintiff was reported for using a racial slur during an arrest on March 4, 2009. ECF No. 28-1 at 22. Coupled with other evidence, the timing could lead a reasonable jury to conclude Plaintiff was investigated and terminated in retaliation for his reporting another officer's use of a racial slur.

Indeed, in addition to the timing, the report from Sgt. Hollingsworth supports the theory Plaintiff was terminated in retaliation for reporting Officer Nichols. According to this report, when Sgt. Hollingsworth was told Plaintiff had racially-explicit material on his MySpace page, he turned to Officer Nichols to access Plaintiff's MySpace page. ECF No. 28-1 at 37. Plaintiff's MySpace page was private and could only be accessed by his friends. *Id.* To gain access to his account, Sgt. Hollingsworth contacted Officer Nichols, and Officer Nichols assisted Sgt. Hollingsworth in investigating Plaintiff and in providing his private MySpace page.[6] *Id.* Officer Nichols was the very person whom Plaintiff had reported. Then, arguably after these individuals worked together to investigate Plaintiff, he was terminated. Viewing the facts in a light most favorable to Plaintiff, there is a fact issue as to whether his reporting a racial slur by Officer Nichols was a substantial motivating factor in the decision to terminate him.[7]

---

[6] It appears at that time Officer Nichols no longer worked for the City of Warren Police Department.

[7] Defendant City attempts to make an argument that because Defendant Peek was not *personally aware* of the underlying animosity in this investigation, he should be absolved of responsibility. Defendant Peek, however, had full access to the report from Sgt. Hollingsworth, and that report alone put him on notice of the many facts of the

### b.    Display of a Confederate Flag

Plaintiff also claims his display of a Confederate Flag was substantial or motivating factor in the decision to terminate him.  Defendant Peek denies this was a factor in the decision to terminate Plaintiff.  ECF No. 37-1 at 12:23-25.  In the City of Warren employee disciplinary report, however, it was reported that Plaintiff had been "[w]arned for flying a Rebel flag in front of his residence, which is conduct unbecoming an officer."  ECF No. 28-1 at 27.  The fact this alleged infraction was listed as a part of the disciplinary report where the decision to terminate him was made.   At a minimum it was considered during the termination process and may lead a reasonable juror to conclude that Plaintiff's display of the Confederate Flag factored into the termination decision.

Plaintiff's claim that this was a substantial or motivating factor is further supported by the fact the investigation into the arrest from March 4, 2009 only began after another officer reported Plaintiff for having a Confederate Flag on his MySpace page.  ECF No. 28-1 at 37.  Again, viewing the facts in a light most favorable to Plaintiff, there is a fact issue as to whether his display of Confederate Flag was a substantial motivating factor in the decision to terminate him.

### 4.    Evidence of Pretext

Defendant City has provided a legitimate, non-discriminatory reason for the termination: Defendant City claims Plaintiff was terminated because he used a racial slur in the course of his duties as a police officer.  Indeed, Defendant Peek testified during his deposition testimony that this was only reason Plaintiff was terminated.  ECF No. 37-1 at 18:12-17.  Thus, the burden shifts to Plaintiff to demonstrate through direct or indirect evidence that Defendant City's "proffered reason" was a pretext for retaliation.

---

investigation which reasonably could have lead him to conclude Plaintiff was the target of retaliation.

Upon review, and viewing the facts in a light most favorable to Plaintiff, he has provided sufficient indirect evidence to establish a fact-issue on pretext.  This finding is based upon the following: (1) Officer Everett could certainly be viewed by a reasonable jury as not a credible witness; (2) another officer, Officer Nichols, was only suspended for a few days for similar conduct; (3) Plaintiff was the only officer investigated for the incident in question, even though Officer Everett's conduct was apparently equally egregious, i.e. he admits not reporting the racial slur for more than a year; (4) a reasonable jury could conclude the investigation against Plaintiff only began because he displayed a Confederate Flag; and (5) the investigation was not thoroughly conducted.

First, only one other officer–Officer Everett–witnessed Plaintiff's use of a racial slur.  ECF No. 37-1 at 18:19-25; 19:1-8.  Even then, he did not report the racial slur until fifteen month later.  *Id.*  Viewing facts in a light most favorable to Plaintiff, this delay diminishes Officer Everett's credibility considerably.  Further, Officer Everett's statements are not consistent with the statements of the deputies who arrived at the scene during the arrest.  The evidence indicates two Bradley County deputies arrived at the scene during the arrest in question.  These two officers were Deputy Jeffrey Jester and Deputy Monty Hearnsberger.  Officer Everett stated the arrestee James Daniels was cuffed when they arrived.  ECF No. 28-1 at 33.  However, according to the testimony of these deputies, Mr. Daniels was not cuffed when they arrived.[8]  ECF No. 37-2 at 11:20-25; ECF No. 37-3 at 5:5-8.  The fact Officer Everett's statements are inconsistent with the statements from these deputies further diminishes Officer Everett's credibility.  This is especially true since these deputies would presumably have no motivation to alter the facts and were not employed by the City of Warren Police Department.

---

[8] This distinction is important because there is an issue as to whether Officer Everett actually assisted in the arrest.

Second, Defendant City did not harshly punish Officer Nichols even though he used a similar racial slur. Defendant Peek testified during his deposition that Officer Nichols had used a similar racial slur. ECF No. 37-1 at 26:21-25. *Id.* However, even though Officer Nichols used a similar racial slur, he was only suspended for two or three days. *Id.* at 29:16-17. Defendant Peek explained the different treatment by stating the behavior from Officer Nichols was less egregious because the slur was made to a person "he considered to [be] a friend." *Id.* at 30:1-2. Defendant Martin also made a similar distinction, claiming one slur was directed toward a citizen while the other was directed toward an officer. ECF No. 37-4 at 44:20-24. Despite these explanations, viewing facts in a light most favorable to Plaintiff, a reasonable jury might conclude Plaintiff was treated differently not because where the slur was directed but because Plaintiff had also engaged in protected speech by reporting Officer Nichols's slur. This is especially true because Plaintiff received an especially harsh punishment–termination–while Officer Nichols was only suspended for a few days.

Third, during the arrest in question, Plaintiff was not the only officer who allegedly engaged in wrongdoing. Arrestee Mr. Daniels was interviewed as a part of the investigation in this case. In this interview, he accused Plaintiff of using racial slurs and excessive force *and* accused Officer Everett of using excessive force by continually macing him. *Id.* Mr. Daniels stated, "the other guy [Officer Everett] did all the macing." *Id.* Defendant City heavily relied upon Mr. Daniels's testimony in its decision to terminate Plaintiff. Indeed, at the hearing in this matter, Defendant City indicated Mr. Daniels's testimony was especially credible because he was a "reluctant witness." It is undisputed that Officer Everett was not punished for using excessive force, and it appears he was not even investigated. The fact Plaintiff was investigated and ultimately terminated while Officer Everett was not when their conduct was apparently equally egregious indicates Defendant City's

17

stated reason for terminating Plaintiff may have been pretextual.

Fourth, at the hearing in this matter, Defendant City represented that the investigation into Plaintiff's conduct began because "reluctant witness" Mr. Daniels and Officer Everett came forward with information regarding the arrest in question. Based upon the record in this case, this appears to be a mischaracterization of the investigation. The "Summary" from Sgt. Hollingsworth outlines the investigation into Plaintiff's conduct, and it appears this investigation actually began because Plaintiff reportedly had a Confederate Flag on his private MySpace page. ECF No. 28-1 at 37.

Indeed, this "Summary" states, "On 06-23-10, I (CID Sgt. Don Hollingsworth) was contacted by Lt. Shaun Hildreth. Lt. Hildreth told me that he had information that Warren Police Corporal Eric Greer had racially explicit material on his MySpace page on the internet. . . ." *Id.* The next day, on June 24, 2010, this report reflects Sgt. Hollingsworth and others were "having a discussion about the racially explicit material on Cpl. Greer's MySpace page" when Officer Everett then volunteered about "an incident that took place in March of 2009, where he stated that Greer called James Daniels a nigger while they were attempting to arrest him." *Id.* Based upon this information and viewing facts in a light most favorable to Plaintiff, this "Summary" could certainly be viewed by a reasonable jury as an attempt to "dig up dirt" on Plaintiff and find a reason to terminate him after he reportedly displayed a Confederate Flag on his MySpace Page.

Fifth, the investigation into the arrest in question does not appear to have been thoroughly conducted. As noted above, two deputies were present toward the end of the arrest in question. Despite this fact, Deputy Jester testified he was never contacted when Sgt. Hollingsworth conducted the investigation into the arrest in question, even though he was at the scene of the arrest. ECF No. 37-2:8-13. Based upon the report from Sgt. Hollingsworth, it also appears Deputy Hearnsberger was not contacted. The fact these individuals, who were possible eye witnesses to some or all of the

18

conduct in question, were not contacted indicates a reasonable jury could determine that this investigation was motivated merely as a means to achieve Plaintiff's termination. Thus, based upon this information, this Court finds Plaintiff has provided sufficient evidence to demonstrate a fact-issue on pretext.

### 5.    Policy or Custom

The final issue to address regarding Plaintiff's free speech claim is whether Defendant City can be held liable for this termination. Defendant City claims it cannot be held liable for the actions of Defendant Peek in his decision to terminate Plaintiff. ECF No. 29 at 16-17. Defendant City claims that under *Monell,* Plaintiff has not demonstrated he was terminated due to a "policy" or "custom" of Defendant City.

In *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658 (1978), the Supreme Court held a municipality or city cannot be held liable solely because it employs a tortfeasor or "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." 436 U.S. at 691. The *Monell* court went further to explain "that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Id.* at 694. "Instead, it is when the execution of the government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* The Eighth Circuit has also held that isolated instances of police misconduct by subordinate officers is insufficient to establish municipal liability or custom required to hold a municipality vicariously liable under § 1983. *Wedemeier v. City of Ballwin, Mo.,* 931 F.2d 24, 26 (8th Cir. 1991).

Further, the terms "policy" and "custom" should not be used interchangeably. *Mettler v. Whitledge,* 165 F.3d 1197, 1204 (8th Cir. 1999). A "policy" is "an official policy, a deliberate choice

of a guiding principle or procedure made by the municipal official who has final authority regarding

such matters." *Id.*  Such a "policy" could result from "a single decision taken by the highest officials

responsible for setting policy in that area of the government's business." *City of St. Louis v.*

*Praprotnik,* 485 U.S. 112, 123 (1988).

In contrast, to establish a "custom," a more rigorous standard must be met. *Mettler,* 165 F.3d

at 1204.  A "custom" requires three showings: (1) the "existence of a continuing, widespread,

persistent pattern of unconstitutional misconduct by the government entity's employees"; (2)

"[d]eliberate indifference to or tacit authorization of such conduct by the governmental entity's

policymaking officials after notice to the officials of that misconduct"; and (3) the plaintiff was

injured by acts pursuant to the government entity's custom.  *Id.*  The evaluation of a whether a

person can be considered a policymaker is a question of state law.  *Praprotnik,* 485 U.S. at 124-25

(holding that "the identification of policymaking officials is a question of state law").

Here, Plaintiff claims an illegal policy, made through the final policymaker Defendants Peek

and Martin, imputed liability to the Defendant City.  ECF No. 36 at 23-24.  Plaintiff claims, "[t]he

decision to terminate Plaintiff was made by the Mayor [Defendant Martin] and Police Chief

[Defendant Peek], each a policymaker, and approved by the City Council, as evidence by the City's

defense and reaction to the request for the name-clearing hearing." *Id.* at 24.  Based upon a review

of the evidence, Defendant Peek initially made the decision to terminate Plaintiff.  ECF No. 37-1 at

4:25-5:4.  Defendant Peek made this decision after contacting the city attorney and the municipal

league. *Id.*  He testified, "[City] policies say that we will contact the city attorney before any–anyone

is terminated, and I also contacted the city attorney and the municipal league." *Id.*  In terminating

Plaintiff, Defendant Peek did not unilaterally make this decision but approved it through his "chain

of command." *Id.*  Further, Defendant Martin testified he concurred in this decision.  ECF No. 37-4

at 10:25-11:2.  Specifically, Defendant Martin testified that he "concurred with the Police Chief's decision to terminate Greer." *Id.*

Defendant City claims Defendant Peek still not the final policymaker under Arkansas law for purposes of employment decisions in the City of Warren Police Department.  In support of this claim, Defendant City cites to *Lewis v. Thomason,* 07-6033, 2009 WL 426543, at *6 (W.D. Ark. Feb. 20, 2009).  In *Lewis*, the Honorable U.S. District Judge Robert T. Dawson found a city police chief may not be considered a final policymaker under Arkansas law:

> The Court agrees that as a matter of Arkansas law, ***police chiefs of the second class[9] are not able to make policy by virtue of their actions***.  To hold otherwise would create a class of employees for which cities would bear respondeat superior liability under § 1983.  To some extent, every municipal employee can be said to make "policy" when they make decisions about how to carry out their duties.  Every supervisor makes decisions that affect their subordinates and every employee, from the highest to the lowest, makes decisions that have some impact on the public.  Such "policy" would come from the employee, not the municipality.  For a single act to constitute municipal policy, the actor must have the legal and actual authority to bind the municipality and speak for it.

*Id.* (emphasis added).

In contrast to the *Lewis* case, in the present action, the mayor was involved in the decision to terminate Plaintiff.  Defendant Martin testified he had hire and fire authority, and he concurred with the Defendant Peek's decision to terminate Plaintiff.  ECF No. 37-4 at 10:25-11:2.  Indeed, Defendant Martin testified as follows regarding the termination: "I read Hollingsworth's report, I talked to the Chief of Police, consulted with the Municipal League to make sure we followed all the rules about termination, and then concurred with the Chief that he was making the right decision."

---

[9] It appears the City of Warren, Arkansas is actually a city of the first class.  Ark. Code Ann. § 14-37-104 (1945); *See local.arkansas.gov/local.php?agency=Warren*.  For purposes of this decision, this distinction between cities of the first and second class is without merit because with both a city of first class and a city of second class, the city council has the power to establish the city police department, and the police department is organized under the supervision of the mayor.  Ark. Code Ann. § 14-52-101(1983).

ECF No. 37-4 at 56:24-25 to 57:1-2. Defendants' interrogatory responses reflect the same. ECF No. 37-6 at 1 (Response to Interrogatory No. 1).

However, as noted above, the evaluation of a whether a person can be considered a policymaker is still a question of state law. *Praprotnik,* 485 U.S. at 124-25. Under Arkansas law, the city council establishes the police department and organizes it "under the general superintendence of the mayor." Ark. Code Ann. § 14-52-101 (1983). The police chief is also under the authority of the mayor. *See, e.g.,* Ark. Code Ann. §§ 14-52-202(a) (1989), 14-52-203(a) (1875). As stated in Ark. Code Ann. § 14-52-203(a), "[i]n cities of the first class, the duty of the chief of police and other officers of the police department shall be under the direction of the mayor."

Despite this grant of authority to the mayor, the mayor is still not always considered the final policymaker for the police department under Arkansas law. Indeed, for Arkansas cities under the Civil Service Commission system, the Civil Service Commission is granted the authority to "prescribe, amend, and enforce rules and regulations governing the fire and police departments of their respective cities." Ark. Code Ann. § 14-51-301(a)(1) (2011). This authority extends to personnel policy, including setting job qualifications, testing, and announcement of job openings. In this case, the Parties do not dispute that the City of Warren, Arkansas has adopted the Civil Service Commission system.[10]

Defendant City claims the Civil Service Commission has final policymaking authority in this case. Defendant City cites *Davidson v. City of Minneapolis, Minnesota,* 490 F.3d 648, 661-62 (8th Cir. 2007) in support of its claim. In *Davidson,* the Eighth Circuit found the City Coordinator and the Civil Service Commission were "vested with the final policymaking authority regarding

---

[10] This Court has not been provided with the specific city ordinance from the City of Warren on this issue; but since this issue is not disputed, there is not need to address this issue further.

employment practices for the entire city." *Id.* at 661.  This authority included the ability "to make, amend or repeal rules in order to promote sound personnel practices for the entire city." *Id.*  As in *Davidson,* this Court finds that because the Civil Service Commission is also granted final policymaking authority over the City of Warren Police Department, neither Defendant Martin nor Defendant Peek had policymaking authority over personnel matters within the Warren Police Department.  Accordingly, Defendant City cannot be held liable for the alleged First Amendment violation of Defendants Martin and Peek.  Thus, this Court **GRANTS** Defendant City's Motion for Summary Judgment on Plaintiff's First Amendment claim (Count I).[11]

### B. Count II: Due Process Claim

Plaintiff claims his constitutional due process rights were deprived because he "requested a name-clearing hearing, but he was not given the opportunity to present witnesses, nor cross-examine the decision-makers in this case." ECF No. 14 ¶ 26.  Defendant City claims it is entitled to summary judgment on this claim because it provided sufficient process to Plaintiff.[12]  ECF No. 29 at 17-22.

Subsequent to his termination from the police department, Plaintiff requested and was given a name-clearing hearing.  ECF No. 30  ¶ 33.  This name-clearing hearing took place on September 7, 2010 at 5:30 PM during a Warren City Council meeting.  *Id.*  Plaintiff was permitted to testify but was not allowed to call witnesses.  *Id.*  ¶ 34.  Plaintiff was not given a time-limit.  *Id.* ¶ *36.*  Plaintiff had retained counsel, but Plaintiff's counsel was not present at this hearing.  *Id.* ¶ 35.  During this hearing, Plaintiff was not given the opportunity to cross-examine the witnesses against him.  ECF

---

[11] It is important to note that in this case, the Civil Service Commission for the City of Warren was not involved in the decision to terminate Plaintiff.  It is undisputed Plaintiff did not file a timely appeal with the Civil Service Commission after he was terminated.  Thus, the final policy maker–the Civil Service Commission–did not perform or approve of the allegedly illegal termination in this case.

[12] Defendant City assumes *arguendo* that Plaintiff has been deprived of his liberty interest.  ECF No. 29 at 18-20.

23

No. 14 ¶ 26.

In determining whether Plaintiff was given a constitutionally-sufficient name-clearing hearing, the standard to apply is from *Hammer v. City of Osage Beach, Missouri,* 318 F.3d 832 (8th Cir. 2002). From *Hammer,* the standard is whether the aggrieved party was "offered a chance to refute charges against him or her." *Id.* Further, *Hammer* indicates the aggrieved party should be given "unrestricted time to speak at the hearing" and the opportunity for his or her lawyer to speak. *Id.*

In this case, Plaintiff received the opportunity to refute the charges against him, and it is undisputed he was allowed unlimited time to speak and clear his name. Further, while Plaintiff had retained a lawyer, his lawyer did not appear at the hearing. Thus, there is no issue as to whether his lawyer was given a full opportunity to present his case. ECF No. 30 ¶ 35. While Plaintiff was not permitted to present witnesses or cross-examine witnesses during this hearing, there is no requirement in *Hammer* that he be permitted to do so. *Hammer,* 318 F.3d at 840 (holding "[a]ll that is required is that the aggrieved party be offered a chance to refute the charges against him or her"). Accordingly, this Court **GRANTS** Defendants' Motion for Summary Judgment as to Count II (Due Process).[13]

### C.      Count III: Arkansas Whistle-Blower Act

Plaintiff claims he was terminated in violation of the AWBA, Ark. Code Ann. § 21-1-601 (2003). ECF No. 14 ¶¶ 8-17, 29-35. Defendant City claims it is entitled to summary judgment on this claim for two reasons: (1) Plaintiff's AWBA claim was insufficiently pled and warrants dismissal and (2) Plaintiff cannot establish a *prima facie* case on this claim. ECF No. 29 at 23-30.

---

[13] Because this Court finds Plaintiff was given constitutionally-sufficient post-termination procedural due process, this Court does not reach the issue of whether Plaintiff waived his procedural due process claim. ECF No. 29 at 21.

This Court will address both arguments.

### 1.    Pleading Requirements

Defendant City claims Plaintiff's cause of action under the AWBA was not properly pled. ECF No. 29 at 24-26.  Under Federal Rule of Civil Procedure 8(a), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The Supreme Court has recently developed a two-prong approach to analyze the sufficiency of the pleadings.  *See Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007).  "First, the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Iqbal,* 129 S.Ct. at 1949.  Second, a complaint that fails to state a plausible claim for relief should not survive an adverse pre-trial judgment.  *Id.* at 1950 (citing *Twombly,* 550 U.S. at 556).

Stated otherwise, the Court in *Iqbal* summarized the two-pronged approach as follows:

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal,* 129 S.Ct. at 1950.

In this case, Defendant City claims "Plaintiff's complaint contains formulaic recitations of the elements of a Whistleblower claim devoid of further factual enhancement."  ECF No. 29 at 25.  Specifically, Defendant City argues Plaintiff has no particularized facts of the following: (1) that Officer Nichols and Sgt. Hollingworth are friends; (2) that Sgt. Hollingsworth had influence and control over Defendant Peek; and (3) that Sgt. Hollingsworth was in fact mad at Plaintiff for reporting Officer Nichols.  *Id.*

Having reviewed the pleadings in this case, this Court finds Plaintiff provided sufficient factual detail to survive dismissal under *Iqbal* and *Twombly*.  As an initial matter, in his Amended Complaint, Plaintiff properly summarized his claims for relief.  ECF No. 14 ¶¶ 8-17.  Plaintiff stated he believed his termination was motivated by his report that fellow officer– Officer Nichols– had used a racial slur in a text to Plaintiff.  *Id.* ¶ 8.  Plaintiff stated he believed Officer Nichols was friends with Sgt. Don Hollingsworth.  *Id.* ¶ 10.  Plaintiff stated he believed Sgt. Hollingsworth had influence over Defendant Peek.  *Id.* ¶ 11.  Sgt. Hollingsworth then told Plaintiff about the investigation against him "with a smile on his face."  *Id.* ¶ 15.  Plaintiff stated he believed he was retaliated against for "whistle-blowing."  *Id.* ¶ 17.

After reviewing the Amended Complaint in this case, this Court finds Plaintiff has properly stated his claims and alleged sufficient facts for his claims to be "plausible."  Further, the summary judgment evidence presented here, when viewed in a light most favorable to the Plaintiff, supports the factual allegations of the Amended Complaint.  Indeed, standing alone, the report from Sgt. Hollingsworth provides sufficient support for Plaintiff's claims.  ECF No. 28-1 at 37-39.  In the "Summary" from Sgt. Hollingsworth, Sgt. Hollingsworth and Officer Nichols, who no longer worked for the police department at the time, reportedly worked together to obtain a copy of Plaintiff's private MySpace Page.  *Id.*  The fact Officer Nichols assisted Sgt. Hollingsworth indicates they were friends.  Also, the fact Plaintiff was fired shortly after a report from Sgt. Hollingsworth to Defendant Peek indicates Sgt. Hollingsworth had influence over Defendant Peek.

Finally, this "Summary" indicates Officer Nichols and Sgt. Hollingsworth may have been angry about Plaintiff's reporting Officer Nichols's racial slur.  According to this report, Officer Nichols met with Sgt. Hollingsworth *within ten minutes* of being contacted at a time when Officer Nichols no longer worked for the City of Warren.  *Id.*  This fact indicates both were potentially

26

working together and were motivated to retaliate against Plaintiff.  Thus, this Court finds Plaintiff's Whistle-Blower claims are plausible and should not be dismissed for an alleged pleading deficiency.

### 2. *Prima Facie* Case

Defendant City claims that even if Plaintiff had properly pled his AWBA cause of action, he still has not presented sufficient evidence to establish a *prima facie* case.  ECF No. 29 at 27-30.  The AWBA provides as follows:

> (a)(1) A public employer shall not take adverse action against a public employee because the public employee or a person authorized to act on behalf of the public employee communicates in good faith to an appropriate authority: . . .
>
> (B) A violation or suspected violation of a law, rule, or regulation adopted under the law of this state or a political subdivision of the state.
>
> (2) The communication shall be made at a time and in a manner which gives the public employer reasonable notice of need to correct the waste or violation.

Ark. Code Ann. § 21-1-603.  Thus, to establish a *prima facie* case, Plaintiff must demonstrate (1) public employer; (2) adverse action; (3) public employee; (4) good faith communication of a violation or suspected violation of a law, rule, or regulation; and (5) reasonable notice.

Defendant City raises three claims in support of its argument that Plaintiff has not provided sufficient evidence to state a *prima facie* case: (1) Plaintiff has not submitted sufficient evidence to demonstrate a causal connection between his report and termination; (2) Defendant City has provided a legitimate, non-retaliatory reason for the dismissal which precludes Plaintiff's action under the AWBA; and (3) Plaintiff did not raise his argument regarding Officer Nichols at the name-clearing hearing.  *Id.*  This Court will address each of these arguments.

First, as outlined above, Plaintiff has submitted sufficient evidence to create a fact-issue on the causal connection between his report and his subsequent termination.  Defendant City argues that *Smith v. Brt,* 363 Ark. 126, 131, 211 S.W.3d 485, 490 (2005) and *Van Horn v. Best Buy Stores, L.P.,*

27

526 F.3d 1144, 1149 (8th Cir. 2008) require a close causal connection to establish liability. In *Smith,* the time-period was only fifteen days, and the Arkansas Supreme Court found that connection was too attenuated. *Id.* Despite Defendant City's claim regarding *Smith*, however, that case dealt with *qualified immunity* for constitutional violations and not with the AWBA. Thus, this Court finds *Smith* is inapplicable.

Further, *Van Horn* was a Title VII case and holds "that an interval of two months is too long to support" a causal inference. *Van Horn,* 526 F.3d at 1149. In *Van Horn,* the timing was the *only* credible support she offered for her retaliation claim. In the present action, as outlined above, Plaintiff has offered more than the mere timing of the termination and his report. Indeed, viewing facts in a light most favorable to Plaintiff, he has presented evidence that the investigator (Sgt. Hollingsworth) and the person he reported for using a racial slur (Officer Nichols) worked together to have him terminated. Thus, *Van Horn* is also inapplicable. Additionally, as outlined above, a reasonable jury could find a causal connection between Plaintiff's report of a racial slur being used by a fellow officer and his termination.

Second, Defendant City claims it is entitled to summary judgment because it provided an allegedly legitimate non-retaliatory reason for the dismissal. Although Defendant City may have provided a reason for Plaintiff's dismissal that on its face appears both legitimate and non-retaliatory, viewing facts in a light most favorable to Plaintiff, and as further outlined throughout this opinion, Plaintiff has presented sufficient evidence to create a factual dispute on whether this stated reason was pretextual. A reasonable jury could simply not believe the proffered reason for the termination of Plaintiff.

Third, Defendant City argues it is entitled to summary judgment on this claim because Plaintiff did not raise his argument regarding Officer Nichols at the name-clearing hearing. ECF No.

29 at 28.  Defendant City relies upon the portion of the AWBA that states the "communication [regarding waste or violation] shall be made at a time and in a manner which gives the public employer reasonable notice of the need to correct the waste or violation."  Ark. Code Ann. § 21-1-603(a)(2).  Defendant City argues Plaintiff should have reported the alleged "waste" or "violation" to the highest level of municipal government in order to be able to recover under this Act.  In the present action, the alleged "waste" or "violation" Plaintiff reported was Officer Nichols's use of a racial slur.  It appears this report qualifies as a "suspected violation of a law, rule, or regulation" of the City of Warren Police Department.[14]  It is undisputed Plaintiff reported that slur to his superiors, including Defendant Peek.

For purposes of the AWBA, a "public employer" is very broad and includes "an office, department, commission, council, agency, board, bureau, committee, corporation, or other instrumentality of a county government or a municipality. . . ."  Ark. Code Ann. § 21-1-602(5).  Notably, the AWBA does not require Plaintiff to report the alleged "waste" or "violation" to the highest level of the municipal government, as Defendant City suggests.  Thus, because Plaintiff reported this alleged violation to his superior Defendant Peek, Plaintiff was not required to allege at his name-clearing hearing that he believed he was unlawfully termination under the AWBA.  Accordingly, this Court finds Defendants' Motion for Summary Judgment as to Plaintiff's AWBA claim (Count III) should be **DENIED.**

### D.      Individual Liability

Defendants Peek and Martin claim they entitled to summary judgment in their individual capacities.  ECF No. 29 at 30-37.  As to the two constitutional claims, they allege they are entitled

---

[14] Defendant City did not dispute whether this report qualified as a "suspected violation of a law, rule, or regulation."

to qualified immunity.  *Id.*  The privilege of "qualified immunity" is an immunity from suit rather than a mere defense to liability.  *Saucier v. Katz,* 533 U.S. 194, 200 (2001), *overruled on other grounds by Pearson v. Callahan,* 555 U.S. 223, 232 (2009).  In this case, the applicable standard for determining whether Plaintiff is entitled to qualified immunity is as follows: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  *Id.*  In the present action, as outlined above, Plaintiff's due process rights were not violated, but there is a fact-issue as to whether Defendants Peek and Martin violated Plaintiff's First Amendment rights.

The second step, however, to evaluate in this inquiry is whether this First Amendment right was "clearly established."  *Saucier,* 533 U.S. at 200 (2001).  Because this case involves a public employer and free speech in the workplace, and because the individualized standards from the *Pickering* balancing test were at issue, this Court finds Plaintiff's First Amendment rights were not "clearly established."  *Buzek v. County of Saunders,* 972 F.2d 992, 997 (8th Cir. 1992) (holding that "when *Pickering's* fact-intensive balancing test is at issue, the asserted First Amendment right 'can rarely be considered "clearly established" for purposes of the *Harlow* qualified immunity standard'").  Accordingly, this Court finds Defendants Peek and Martin are entitled to qualified immunity on Plaintiff's First Amendment claims.

4.    **CONCLUSION**

Based upon the foregoing, this Court **GRANTS** summary judgment for Defendant City on Plaintiff's Counts I and II.  This Court **DENIES** summary judgment as to Count III.  The Court also finds Defendants Peek and Martin are not liable in their individual capacities.  This Court retains supplemental jurisdiction of Plaintiff's AWBA claim under 28 U.S.C. § 1367.  *Clark v. Iowa State Univ.,* 643 F.3d 643, 645 (8th Cir. 2011) (holding that the federal court retained supplemental

jurisdiction over state-law claims derived from a common nucleus of operative fact).

**ENTERED this 23rd day of March, 2012.**

/s/   Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE